IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| TARA B.,<br><br>                Plaintiff,<br><br>vs.<br><br>MARTIN O'MALLEY,<br>Commissioner of Social Security,<br><br>                Defendant. | Case No. 1:22–cv–00129–CMR<br><br><br>MEMORANDUM DECISION AND ORDER AFFIRMING THE COMMISSIONER'S FINAL DECISION<br><br>Magistrate Judge Cecilia M. Romero |

The parties in this case have consented to the undersigned conducting all proceedings (ECF 12). 28 U.S.C. § 636(c). Plaintiff Tara B. (Plaintiff), pursuant to 42 U.S.C. § 405(g), seeks judicial review of the decision of the Commissioner of Social Security (Commissioner) denying her claim for disability insurance benefits (DIB) under Title II of the Social Security Act (Act). The court heard argument in this matter on December 14 and 2023 (ECF 37, 39). After careful review of the entire record (Certified Administrative Record (Tr.), ECF 14–17), the parties' briefs (ECF 20, 26, 27), and as set forth at the hearing, the undersigned concludes that the Commissioner's decision is supported by substantial evidence and free from reversible error. For the reasons stated at the hearing and below, the court hereby DENIES Plaintiff's Motion for Review of Agency Action (ECF 20) and AFFIRMS the decision of the Commissioner.

## I.    BACKGROUND

Plaintiff was 44 years old on her disability onset date of September 13, 2020 (Tr. 83). She graduated high school, attended airline school, and had past relevant work as an airline ticket agent until her retirement in September 2020 (Tr. 55–57, 245–46, 287, 1246). Plaintiff filed her application for DIB on September 29, 2020, alleging disability due to anxiety disorder, depression,

diabetes, bone spurs (heel, foot), osteoarthritis in knee, obesity, high blood pressure, and high cholesterol (Tr. 84).

The ALJ followed the Commissioner's five-step sequential evaluation process for disability claims. *See* 20 C.F.R. § 404.1520(a)(4). In a decision dated March 2, 2022, the ALJ determined at step two Plaintiff had severe impairments of Type 2 diabetes mellitus, hypertension, hyperlipidemia, morbid obesity, degenerative disc disease of the lumbar spine, osteoarthritis of the knees, major depressive disorder, and generalized anxiety disorder (Tr. 36). At step three, the ALJ considered Plaintiff's spine disorders under Listings 1.15, 1.16, 1.18, 3.09, 4.02, and 9.00, finding the criteria not met (Tr. 36–37). The ALJ also considered Plaintiff's mental impairments under Listings 12.04 and 12.06, finding mild limitations in understanding, remembering, or applying information and moderate limitations in interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself (Tr. 36–37).

The ALJ then determined Plaintiff had the residual functional capacity (RFC) to perform light work with the following additional limitations addressing her mental impairments: "[S]he is able to learn, understand and carryout simple as well as complex, but not detailed, instructions. She can have occasional interaction with supervisors, co-workers, and the public" (Tr. 38). At step four, the ALJ found that, given this RFC, she was not able to perform past relevant work as an airline ticket agent (Tr. 42). Consistent with vocational expert testimony, the ALJ found at step five that Plaintiff could perform jobs existing in significant numbers in the national economy, including marker, router, and photocopy machine operator, all light, unskilled work (Tr. 42–43). The ALJ therefore concluded that she was not disabled and denied disability benefits (Tr. 44).

After the Appeals Council denied Plaintiff's request for review, she timely sought judicial review by this court (Tr. 1–4; ECF 2). Plaintiff then filed an opening brief arguing the ALJ's mental

RFC assessment was unsupported by substantial evidence because he failed to account for all of Plaintiff's mental limitations (ECF 20 at 1, 8–12). The Commissioner responded to these arguments in a response brief (ECF 26). Plaintiff then filed a reply, again arguing that the ALJ's mental RFC assessment was unsupported by substantial evidence (ECF 27). This court then heard oral argument from the parties on December 14 and 20, 2023 (ECF 37, 39).

## II.   STANDARD OF REVIEW

"On judicial review, an ALJ's factual findings [are] 'conclusive' if supported by 'substantial evidence.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019) (quoting 42 U.S.C. § 405(g)). The substantial evidence threshold "is not high," and "defers to the presiding ALJ, who has seen the hearing up close." *Id.* at 1154, 1157. It is "more than a mere scintilla" and "means— and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 139 S. Ct. at 1154 (internal quotation omitted). Under this deferential standard, the court may neither reweigh the evidence nor substitute its judgment for that of the ALJ. *See Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014). If the evidence is susceptible to multiple interpretations, the court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotation and citation omitted). In reviewing under sentence four of 42 U.S.C. § 405(g), a court must affirm if the ALJ's decision is supported by substantial evidence and the correct legal standards were used, even if the court believes the evidence is "equivocal." *Nguyen v. Shalala*, 43 F.3d 1400, 1403 (10th Cir. 1994).

### III.    DISCUSSION

**A.    The ALJ assessed a mental RFC consistent with the State agency psychological consultants' prior administrative medical findings after finding them persuasive.**

Plaintiff argues the ALJ erred in failing to include additional mental limitations in Plaintiff's RFC based on the opinions of state agency consultants Mark Berkowitz (Dr. Berkowitz) and Lois Huebner (Dr. Huebner) even though ALJ found these opinions persuasive.

State agency psychological consultants reviewed the record in 2021 to evaluate Plaintiff's mental abilities and limitations. *See* 20 C.F.R. § 404.1513a(b)(1) (such "consultants are highly qualified and experts in Social Security disability evaluation."). The agency's Program Operations Manual System (POMS)[1] explains how State agency consultants evaluate a claimant's mental functioning on a standard, agency-issued form. SSA POMS DI 24510.060, Mental Residual Functional Capacity Assessment. The POMS states that the "summary conclusions" section of the form is "merely a worksheet to aid in deciding the presence and degree of functional limitations and not the adequacy of documentation and does not constitute the RFC assessment." *Id.* (B)(2). Section III of the form is where the consultant records the actual mental RFC assessment. *See id.* at (B)(4). In Section III, the medical consultant explains the "summary conclusions" in terms of the extent to which the claimant can perform mental functions in work settings. *See id.*

In a Mental Residual Functional Capacity Assessment (MRFCA) form, Dr. Berkowitz and Dr. Huebner found that, while Plaintiff had no limitations or was not significantly limited in most areas, she was moderately limited in several areas, including the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods (Tr. 101–

---

[1] The POMS is "a set of policies [by SSA] to be used in processing claims." *McNamar v. Apfel*, 172 F.3d 764,766 (10th Cir. 1999).

04, 117). Later in the MRFCA form, Dr. Berkowitz and Dr. Huebner provided a narrative opinion that Plaintiff could persist at tasks that could be learned in one to three months on the job (*i.e.*, semi–skilled work); could work in coordination with or proximity to others without being (unduly) distracted by them or exhibiting behavioral extremes; and could interact briefly with the public (Tr. 104–05, 118). The ALJ found the prior administrative medical findings were generally persuasive (Tr. 41). The ALJ then found Plaintiff had the RFC to learn, understand, and carry out simple and complex (but not detailed) instructions and to have occasional interaction with supervisors, co-workers, and the public (Tr. 38).

Plaintiff argues that the ALJ did not address the consultants' Section I findings of moderate limitations after finding the prior administrative medical findings were generally persuasive (ECF 20 at 9–10; ECF 27 at 2–3). Plaintiff's argument ignores the consultants' narrative findings and instead focuses on their summary conclusions of moderate limitations. Courts have repeatedly rejected similar arguments, which conflate two sections of the MRFCA form the consultants had completed. "The Tenth Circuit and courts in this District have clearly held that an ALJ need not specifically rely on the limitations in Section I of the Mental RFC form where the ultimate RFC finding addresses the doctor's conclusions in Section III." *Tuck v. Colvin*, No. 1:14-CV-000150-EJF, 2016 WL 1228587, at *4 (D. Utah Mar. 28, 2016). The Tenth Circuit has explained that "[c]hallenges to whether an ALJ assessment of residual functional capacity incorporate limitations in section I [of the MRFCA] ask 'the wrong question.'" *Fannin v. Commr., SSA*, 857 F. App'x 445, 447–48 (10th Cir. 2021) (quoting *Smith v. Colvin*, 821 F.3d 1264, 1269 n.2 (10th Cir. 2016)). A court compares the ALJ's findings to the State agency consultants' findings "on residual functional capacity, not [their] notations of moderate limitations.'" *Id*. (quoting *Smith*, 821 F.3d at 1269 n.2).

5

The Tenth Circuit has affirmed that, so long as the narrative addresses the summary conclusions, an ALJ need only discuss the narrative opinion. *See Carver v. Colvin*, 600 F. App'x 616, 619 (10th Cir. 2015). Citing three unpublished decisions from the District of New Mexico, Plaintiff argues that a limitation to unskilled work does not address the moderate limitations found by the psychological consultants (ECF 20 at 10), but these decisions are outliers in this circuit. The Tenth Circuit has repeatedly found that similar moderate limitations were addressed by similar narrative limitations. *See, e.g.*, *Smith*, 821 F.3d at 1269; *Fannin*, 857 F. App'x at 447–48; *Webb v. Comm'r, Soc. Sec. Admin.*, 750 F. App'x 718, 721 (10th Cir. 2018); *Lee v. Colvin*, 631 F. App'x 538, 541 (10th Cir. 2015). Judges in this court have reached the same conclusion. *See, e.g.*, *Natalie L. v. Kijakazi*, 631 F. Supp. 3d 1114, 1121 (D. Utah 2022), *aff'd sub nom. Lager v. Comm'r, SSA*, No. 22-4116, 2023 WL 6307490, at *1 (10th Cir. Sept. 28, 2023); *Barbara B. v. Kijakazi*, No. 1:21-CV-00094, 2022 WL 4243805, at *8 (D. Utah July 29, 2022), *report and recommendation adopted*, 2022 WL 3644247 (D. Utah Aug. 24, 2022), *appeal dismissed sub nom. Bethke v. Comm'r, SSA*, No. 22-4101, 2023 WL 3091522 (10th Cir. Mar. 8, 2023); *Tuck*, 2016 WL 1228587, at *4.

Here, as in *Smith*, *Fannin*, *Webb*, and *Lee*, the State agency psychological consultants addressed their summary conclusions of moderate limitations by limiting the complexity of work that Plaintiff could do and the amount of social interaction that she could maintain. *See Barbara B.*, 2022 WL 4243805, at *8 ("After making the general findings that [the claimant] was moderately limited . . . in her ability to complete a normal workday without interruptions from psychological symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods—Dr. Carlson explained precisely what those findings meant for purposes of [the claimant's] abilities."). Plaintiff's layperson opinion that the psychologists' narrative did not

address their summary conclusions cannot overcome the psychologists' own findings that they did. Moreover, even if it were possible to view the psychologists' assessments or the ALJ's findings derived from them with more skepticism, "to do so would require [the court] to reweigh the evidence, which exceeds the scope of substantial-evidence review." *Fannin*, 857 F. App'x at 448. The ALJ's findings were substantially supported by the record in this case, and the court therefore affirms. *See Smith*, 821 F.3d at 1266 (noting that under the substantial evidence standard, the court cannot reweigh the evidence or substitute its judgment for that of the ALJ).

**B.      The ALJ assessed a mental RFC consistent with consultative psychologist Dr. Colledge's medical opinion after finding it persuasive.**

Plaintiff again argues the ALJ failed to include all the limitations in Dr. Colledge's opinion despite finding her opinion persuasive. Plaintiff underwent a consultative examination with psychologist Dr. Colledge in June 2021 (Tr. 1906). Dr. Colledge's findings were largely normal, including good general fund of information and unimpaired short- and long-term memory, abstract reasoning, judgment, and insight (Tr. 1908). Plaintiff's attention and concentration were adequate, and she spoke normally, provided logical and coherent responses, and did not exhibit tangentiality, circumstantiality, or poverty of thought content (Tr. 1908). She appeared capable of reasonably relating to other people (Tr. 1907). Dr. Colledge opined Plaintiff "appear[ed] capable of completing some basic work tasks" and "appear[ed] capable of remembering and carrying out simple as well as complex instructions" (Tr. 1909).

Following her examination, Dr. Colledge provided a four-paragraph Functional Assessment of Plaintiff's abilities (Tr. 1909). In the first and third paragraphs of the Functional Assessment, Dr. Colledge described Plaintiff's daily activities (Tr. 1909). In the second paragraph, Dr. Colledge described Plaintiff's ability to manage money (Tr. 1909). And in the fourth paragraph, the Dr. Colledge described Plaintiff's workplace functioning:

> In terms of employment, [Plaintiff] appears capable of completing some basic work tasks. At present, [she] is reporting primarily that her mental health symptoms are impeding her ability to work. She appears to have a somewhat impaired capacity to tolerate work stress. She struggles with her depressive symptoms and lack of motivation. She was having difficulty keeping a consistent work schedule. She also has anxiety in her interactions with others and would have conflicts at work. She reported that her weight has made it more difficult for her to accomplish some physical tasks. However, she does appear capable of remembering and carrying out simple as well as complex instructions.

Tr. 1909.

The ALJ found that Dr. Colledge's medical opinion was persuasive (Tr. 41). The ALJ summarized Dr. Colledge's opinion as stating that Plaintiff "could perform simple and complex tasks, but she might have some issues with anxiety when dealing with others" (Tr. 41). The ALJ then found that Plaintiff had the mental RFC to learn, understand, and carry out simple and complex (but not detailed) instructions and occasionally interact with supervisors, co-workers, and the public (Tr. 38).

Plaintiff argues that, although the ALJ was persuaded by Dr. Colledge's medical opinion, he did not include all its opined limitations in her RFC (ECF 20 at 11–12). The court disagrees. Not every medical source statement is a "medical opinion" as defined by the agency's 2017 regulation revisions. Rather, "[a] medical opinion is a statement from a medical source about what [a claimant] can still do despite [her] impairment(s) and whether [she has] one or more impairment–related limitations or restrictions in the following abilities: . . . [her] ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co–workers, or work pressures in a work setting." 20 C.F.R. § 404.1513(a)(2)(ii).

Here, Dr. Colledge's statement that Plaintiff "was having difficulty keeping a consistent work schedule" was not a medical opinion. It was instead Dr. Colledge's recitation of Plaintiff's

8

self-reported limitations, *i.e.*, "other medical evidence." *See id*. § 404.1513(a)(3) ("Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion . . ."). The ALJ found that Plaintiff's self-reported limitations were inconsistent with other evidence, a finding that Plaintiff has not challenged. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (waiver). Plaintiff's self-reported symptoms were neither uncontradicted nor significantly probative, and the ALJ did not err in not discussing Dr. Colledge's recitation of them. *See Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996) ("[A]n ALJ is not required to discuss every piece of evidence. Rather, in addition to discussing the evidence supporting his decision, the ALJ must also discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects.").

A closer question is whether Dr. Colledge's statement that Plaintiff "appear[ed] to have a somewhat impaired capacity to tolerate work stress" was a medical opinion (Tr. 1909). Like Dr. Colledge's statement that Plaintiff was having difficulty keeping a consistent work schedule, this statement appears within Dr. Colledge's recitation of Plaintiff's self-reported limitations (Tr. 1909). The court concludes that this statement is also a recitation of Plaintiff's self-reported symptoms, and the ALJ did not err in not discussing it for the reasons discussed above. The ALJ reasonably accounted for Dr. Colledge's opinion when the ALJ found that Plaintiff had the mental RFC to perform simple and some complex work with no more than occasional interaction with others (Tr. 38, 41).

C.    **Plaintiff waived any challenge to the ALJ's step-five findings by not briefing the issue but instead raising it for the first time at oral argument.**

At oral argument, Plaintiff raised a challenge to the ALJ's decision that was not raised in her opening brief (which was filed February 10, 2023), not raised in her reply brief (which was filed May 25, 2023), and not otherwise brought to the court's attention prior to the December 14,

9

2023, oral argument. For the first time, she claimed her mental RFC was inconsistent with the general educational development (GED) reasoning level of the occupations identified by the vocational expert and relied upon by the ALJ.

The court declines to consider this argument because Plaintiff waived it by not raising it in the briefing. "[W]aiver principles developed in other litigation contexts are equally applicable to [S]ocial [S]ecurity cases." *Berna v. Chater*, 101 F.3d 631, 632 (10th Cir. 1996) (citation omitted). "The failure to raise an issue in an opening brief waives that issue." *Anderson v. U.S. Dep't of Lab.*, 422 F.3d 1155, 1174 (10th Cir. 2005). Here, Plaintiff not only failed to raise the issue of GED reasoning levels in her opening brief—she did not do so even in her reply brief. Rather, she first raised the allegation of error at oral argument. "This Court, like nearly every other, does not permit new claims to be made for the first time at oral argument, so the Court considers the argument to be waived." *Aguilar v. Berryhill*, No. CV 17-119 GJF, 2018 WL 3656157, at *13 n.13 (D.N.M. Aug. 2, 2018).

The court recognizes that a party's waiver may be excused in cases of plain error. "To be plain, the error must be clear or obvious under current, well-settled law of either the Supreme Court or [the Tenth Circuit]." *Fed. Deposit Ins. Corp. v. Kan. Bankers Sur. Co.*, 840 F.3d 1167, 1172 (10th Cir. 2016). Plaintiff cannot meet her burden to establish plain error here. *See id.* at 1171–72. There is no current, well-settled law of either the Supreme Court or the Tenth Circuit holding that a mental RFC for simple and some "complex" work is inconsistent with GED reasoning level 2 (Tr. 38). Under these circumstances, the court declines to excuse Plaintiff's waiver.

## IV.   CONCLUSION

For the foregoing reasons, the court hereby affirms the Commissioner's final decision denying Plaintiff's application for disability insurance benefits.

DATED this 21 March 2024.

                                               *Cecilia M. Romero*
                                           Magistrate Judge Cecilia M. Romero
                                           United States District Court for the District of Utah